IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-02043-PAB-KMT

CHRISTIAN RAPP, on behalf of himself and all others similarly situated,

    Plaintiff,

v.

HV OCCUPATIONAL HEALTH ADVISORS OF AMERICA, LLC, a Texas limited liability company;
ROBERT MITCHELL; and
ADEN SCHILLIG,

    Defendants.

---

## ORDER

---

This matter is before the Court on Plaintiff's Motion for Conditional Certification of Fair Labor Standards Act Claim [Docket No. 23]. Defendants responded to plaintiff's motion, Docket No. 26, to which plaintiff replied. Docket No. 27.

## I. BACKGROUND

This is a dispute brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. Plaintiff worked as a paramedic for defendant HV Occupational Health Advisors of America, LLC ("HV") at the Cheyenne Ridge Wind Construction Project ("Wind Project") from approximately August 22, 2019 until approximately April 23, 2020. Docket No. 1 at 3–4, ¶¶ 13, 15. HV is a for-profit healthcare company that provides emergency and preventative medical services at construction sites. *Id.* at 3, ¶ 12.[1]

---

[1] Defendant Robert Mitchell is HV's Vice President of Operations and defendant Aden Schillig is HV's Clinical Director *Id.* at 2, ¶ 7. The Court refers to Mr. Mitchell and

HV paramedics dispense first aid to injured and ill workers, file and maintain patient care records, perform urinalysis drug screenings, ensure that staff wear appropriate personal protective equipment and provide such equipment when needed, report safety issues to general contractors, conduct first aid and CPR trainings, coordinate with first responders, participate in mock disaster scenarios, and participate as members of the rescue team in emergency situations. *Id.* at 4, ¶16–17. Paramedics do not have authority to hire or fire employees, make recommendation on hiring or firing, exercise discretion or independent judgment on significant matters. *Id.*, ¶ 18. Paramedics are also not involved in HV management and have no subordinates. *Id.*

The individual defendants developed and maintain total control over HV's pay practices. *Id.* at 5, ¶ 21. The individual defendants have the authority to set paramedics' rates of pay and payment schedule, including setting the number of hours paramedics work, and exercise total control over HV's personnel decisions. *Id.*, ¶¶ 22–23. The individual defendants determined plaintiff's work schedule and communicated that schedule to plaintiff. *Id.*, ¶ 23. Mr. Mitchell determines where paramedics are assigned and regularly changes paramedics' assignments locations. *Id.*, ¶¶ 24–25. Sometimes paramedics are required to travel between multiple states for work. *Id.*, ¶ 25.

The individual defendants provide paramedics most of the materials they need to perform their jobs, including medical equipment and safety gear. *Id.* at 6, ¶ 26. The individual defendants also control the nature of the paramedics' relationships with

---

Mr. Schillig collectively as the "individual defendants."

general contractors at the construction sites.  *Id.*, ¶ 27.

Defendants improperly classified plaintiff and other paramedics as exempt from the overtime requirements of the FLSA and have paid, and continue to pay, paramedics a flat, biweekly salary of $1,920, which amounts to $50,000 per year.  *Id.* at 5, ¶¶ 19–20.  Paramedics frequently work more than 50 hours per week and routinely more than 65 hours per week.  *Id.* at 6, ¶ 28.  For example, plaintiff worked 76.75 hours in the week starting on November 10, 2019; 77.75 hours in the week starting on November 17, 2019; and 77.25 hours in the week starting on January 26, 2020.  *Id.*  Defendants, however, failed to pay plaintiff for all of this time, even though defendants are aware of the number of hours paramedics work because HV requires paramedics to submit weekly timecards.  *Id.*, ¶¶ 28–29.  Defendants also failed to clearly communicate to paramedics that they would be paid a flat rate or on a "fluctuating workweek basis."  *Id.*, ¶ 30.  For example, plaintiff's offer letter from HV stated that he would be paid "$50,000 . . . a Year Salary . . . [for] up to 62 hours a week . . . [and] [a]fter working 62 hours each week, a flat rate will be paid of $24.00," which plaintiff interpreted to mean that his rate of pay would vary depending on whether he worked more or less than 62 hours in a week.  *Id.*  Plaintiff's biweekly paychecks, however, were always for the same amount, regardless of whether he worked more than 62 hours during that week.  *Id.* at 7, ¶ 31.  Plaintiff believes that other paramedics' offer letters contained identical language, that other paramedics interpreted the language as plaintiff did, and that other paramedics were paid the same amount regardless of whether they worked more than 62 hours.  *Id.*, ¶¶ 32–33.

Defendants, therefore, have failed to pay paramedics, including plaintiff, for all

their hours worked and have failed to properly calculate paramedics' rates of pay. *Id.*, ¶ 34. Defendants also have inadequate "timekeeping methods" used to track the time paramedics spend working because, although defendants require paramedics to submit timecards, the timecards do not accurately reflect the time paramedics spend all in job-related activities, for example running errands for general contractors. *Id.*, ¶ 35. Defendants have a uniform policy and practice of failing to pay paramedics for all hours worked in excess of 40 hours per week. *Id.*, ¶ 36. Defendants' violations are willful because they are aware of their obligations to pay overtime, as they have been sued for failing to pay minimum wage and overtime in the past. *Id.*, ¶ 37.

## II. ANALYSIS

### A. Conditional Certification

Plaintiff asks the Court to conditionally certify the case as a collective action pursuant to § 216(b) of the FLSA, which provides in pertinent part:

> Any employer who violates the provisions of . . . section 207 of this title shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages. . . . An action to recover the liability prescribed in [Section 207] may be maintained against any employer . . . in any Federal . . . court of competent jurisdiction by any one or more employees *for and in behalf of himself or themselves and other employees similarly situated*.

29 U.S.C. § 216(b) (emphasis added). There is a two-step approach for determining whether plaintiffs are "similarly situated" for purposes of FLSA collective action certification. *Thiessen v. GE Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001).[2] A

---

[2] *Thiessen* involved a collective action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Because the ADEA adopts the collective action mechanism set forth in FLSA § 216(b), courts apply *Thiessen* to FLSA collective actions. *See Kaiser v. At The Beach, Inc.*, 2010 WL 5114729, at *4 n.9 (N.D.

court's initial certification comes at the notice stage, where courts determine whether the putative collective action members are similarly situated for purposes of sending notice to putative members. *Id.* at 1102. At this first stage, plaintiff is required to provide "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Id.*; *see also Stransky v. HealthONE of Denver, Inc.*, No. 11-cv-02888-WJM-MJW, 2012 WL 6548108, at *4 (D. Colo. Dec. 14, 2012). This is a "lenient" standard, *Baldozier v. Am. Family Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1092 (D. Colo. 2005), "which typically results in conditional certification of a representative class." *Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 432 (D. Kan. 2007). The second stage, which comes at the conclusion of discovery, applies a stricter standard of "similarly situated," including application of at least four factors, to determine whether the case can proceed as a collective action. *Thiessen*, 267 F.3d at 1102-03.

Plaintiff seeks to represent a collective of "all Site Paramedics (regardless of the actual title bestowed upon them) who worked for HV at any time during the last three years plus any period of tolling," Docket No. 23 at 2, because "all of these individuals performed the same material job duties, were subject to the same unlawful policies that failed to properly account for compensable work, and routinely worked more than 40 hours per workweek." *Id.* at 8. Plaintiff argues that his allegations and declaration testimony from other site paramedics show that site paramedics "were common victims of a policy and practice designed to deny them overtime compensation." *Id.*

---

Okla. Dec. 9, 2010); *see also Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004).

5

Plaintiff requests that the Court order HV to "produce the names, mailing addresses, dates of employment, job titles, job locations, telephone numbers, and e-mail addresses of all putative members of the FLSA collective in an electronically readable format within ten (10) days."  Docket No. 23 at 12.  Plaintiff further asks the Court to toll the FLSA's statute of limitation.  *Id.* at 10–11.  Plaintiff explains that the FLSA's limitations period is not necessarily tolled when an action is filed but rather only tolls upon the filing of each individual's consent form to join the action.  *Id.*  Therefore, collective action members' claims "silently erode between the time [p]laintiff moves to send notice to the collective and the filing of the respective consent forms."  *Id.* at 11.

Defendants have agreed to the conditional certification of a class of "all Site Paramedics employed by HV at any time during the last three years."  Docket No. 26 at 1.  Defendants have also agreed to plaintiff's requested methods of dissemination, "i.e., via U.S. Mail and e-mail, including a reminder notice as well as posting the Notice at the jobsite."  *Id.* at 2.  The parties, therefore, disagree on three issues: first, the definition of the class – that is, whether it should include individuals with job titles other than "site paramedic" – second, whether equitable tolling for the conditional class is appropriate; and third, whether defendants should be compelled to produce phone numbers for each member of the class.  *Id.*; Docket No. 27 at 1–2.

On the definition of the class, defendants contend that their proposed definition is "both clearer than [plaintiff's] and removes the improper presupposition of liability."  Docket No. 26 at 2 n.1.  Plaintiff disagrees.  Docket No. 27 at 3.  Plaintiff also argues that his definition is clearer because it includes all people who performed site paramedic duties regardless of job title, that his proposed definition does not presuppose any

6

liability, and that HV has employed site paramedics under varying job titles, including "Managing Remote Site Paramedic" and "Shift Managing Site Paramedic." *Id.* at 3–4.

At this stage, the Court must determine whether plaintiff and the putative class members were employed in similar positions and whether the plaintiff and putative class members were subject to the defendants' unlawful policy, decision, or plan. *Grady v. Alpine Auto Recovery, LLC*, No. 15-cv-00377-PAB-MEH, 2015 WL 3902774, at *2–3 (D. Colo. June 24, 2015). This is a lenient standard and a minimal burden. *See Baldozier*, 375 F. Supp. 2d at 1092. Defendants do not argue that putative class members whose job titles were not "Site Paramedic" were employed in positions that were not similar to site paramedics. Nor do defendants argue that there are employees who performed similar duties to site paramedics but who were subject to a different policy, decision, or plan. Rather, defendants only argue, in a footnote, that plaintiff's definition is clearer and does not presuppose liability. Docket No. 26 at 2 n.1. The Court finds that plaintiff has provided sufficient allegations that the putative collective members that it defines were subject to a single decision, policy, or plan. *See Thiessen*, 267 F.3d at 1102-03; *see also Coldwell v. Ritecorp Env't Prop. Sols.*, No. 16-cv-01998-NYW, 2017 WL 4856861, at *4 (D. Colo. July 20, 2017) (finding allegations sufficient to demonstrate policy of misclassification "under the lenient standard imposed" at the initial certification stage); *Arfsten v. Cutters Wireline Serv., Inc.*, No. 16-cv-01919-MSK-KMT, 2017 WL 2400489, at *1 (D. Colo. May 26, 2017) (finding allegations that employees "were subject to the same compensation policies concerning the payment of overtime" were sufficient to show substantial similarity). Furthermore, defendants believe the two definitions "encompass[] all the same collective class members." Docket No. 26 at 2

7

n.1.  Thus, the Court accepts plaintiff's inclusion of site paramedics regardless of actual title.

The next issue for the Court to consider is equitable tolling.  Equitable tolling is to be invoked sparingly, "only when a litigant's failure to meet a legally mandated deadline unavoidably [arises] from circumstances beyond that litigant's control."  *Stransky v. HealthONE of Denver, Inc.*, 868 F. Supp. 2d 1178, 1181 (D. Colo. 2012).  Equitable tolling may toll the expiration of the statute of limitations.  The Tenth Circuit has explained that,

> [i]n civil actions, th[e] court has applied equitable tolling when the defendant's conduct rises to the level of active deception; where a plaintiff has been lulled into inaction by a defendant, and "[l]ikewise, if a plaintiff is actively misled or has in some extraordinary way been prevented from asserting his or her rights."

*United States v. Clymore*, 245 F.3d 1195, 1199 (10th Cir. 2001) (quoting *Biester v. Midwest Health Servs., Inc*, 77 F.3d 1264, 1267 (10th Cir. 1996)); *see also Geiger v. Z-Ultimate Self Def. Studios LLC*, No. 14-cv-00240-REB-NYW, 2015 WL 1139843, at *1 (D. Colo. Mar. 11, 2015).

Plaintiff argues that equitable tolling is appropriate in this case because joinder in collective FLSA actions is "presumptive" and "lenient" and because "[t]he collective members should not be punished for the inherent inefficiencies of motions practice."  Docket No. 23 at 11.  Defendants argue that equitable tolling is not appropriate because plaintiff has failed to identify or establish a single circumstance that would warrant equitable tolling.  Docket No. 26 at 3–4.  Rather, defendants argue, plaintiff has delayed delivery of the notice by insisting on briefing the remaining issues despite defendants' stipulations.  *Id.*  In his reply, plaintiff argues that equitable tolling is necessary in this

case in the interest of justice because, "[w]hile the motion is pending, members of the collective remain unaware of their potential claims and how to preserve them." Docket No. at 5. Therefore, absent equitable tolling, plaintiff argues, "at least some of the otherwise eligible members of the collective, through no fault of their own, lose their claims." *Id.*

In general, "potential opt-in plaintiffs are presumed to be aware of the facts and circumstances of their employment, and their claims accrue when they gain knowledge of these facts." *Valverde v. Xclusive Staffing*, Inc., No. 16-cv-00671-RM-MJW, 2017 WL 6945044, at *4 (D. Colo. Oct. 31, 2017). In making an equitable tolling determination, courts employ a flexible standard and consider five factors, including the lack of notice of the filing requirement, lack of constructive knowledge of the filing requirement, diligence in pursuing one's rights, absence of prejudice to the defendant, and the plaintiff's reasonableness in remaining ignorant of the particular legal requirement. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561 (10th Cir. 2000).

In this case, potential plaintiffs would have had actual notice of their claims against defendants at the end of each pay period when defendants did not compensate them for the excess hours worked, and plaintiff provides no evidence that potential plaintiffs were prevented from diligently pursuing their rights. While defendants are in sole possession of the contact information for the putative class members, *see* Docket No. 27 at 6, as defendant was in *Stransky*, 868 F.3d at 1181–82, the Court does not find it "particularly unjust" to deny plaintiff's request for equitable tolling. Contrary to plaintiff's argument, claims by potential class members have not been allowed to

9

diminish or expire due to circumstances beyond their direct control, as each paramedic could have acted individually to assert his or her rights under the FLSA, and many paramedics likely would have been aware that their co-workers were paid similarly. Moreover, the Court does not find the conditions in this case analogous to those where the Tenth Circuit has recognized the need for equitable tolling. For instance, unlike in *Gray v. Phillips Petrol. Co.*, 858 F.2d 610, 616 (10th Cir. 1988), where the court found tolling appropriate because plaintiffs were "lulled into inaction," defendant did not show "significant prejudice" that would result from tolling, and defendant was "fully apprised" of plaintiffs' claims, plaintiff here has not shown that potential class members in this case have been lulled into inaction. *See* Docket No. 23 at 10–11. While defendants do not claim that they would be prejudiced by tolling, let alone prejudiced unduly, as they have been aware of the conditional collective nature of this matter from the beginning, it is plaintiff's burden to establish that equitable tolling is appropriate. *See, e.g.*, *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) (finding equitable tolling appropriate when the plaintiff demonstrates "extraordinary circumstances" that made it "impossible" for the plaintiff to file a timely lawsuit and holding that tolling is available only "when [a plaintiff] diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control").

The final factor in the analysis also militates against equitable tolling. There is no indication from plaintiff's motion that the putative collective action members are somehow ignorant of their rights. *See Judd v. KeyPoint Gov't Sols., Inc.*, No. 18-cv-00327-RM-STV, 2018 WL 4383037, at *9 (D. Colo. July 30, 2018), *report and recommendation adopted*, No. 18-cv-00327-RM-STV, 2018 WL 7142193 (D. Colo. Dec.

4, 2018). Considering these factors, the Court finds that equitable tolling is not appropriate. Equitable tolling is to be invoked sparingly, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990), and plaintiff has failed to demonstrate that his or any other paramedic's failure to timely assert their FLSA claims was due to a circumstance beyond their control. *See Stransky*, 868 F. Supp. 2d at 1181.

The final dispute for the Court to resolve is plaintiff's request for phone numbers. Defendants argue that, because plaintiff "could not articulate a [good] reason for the need for the class members' telephone numbers, Defendants can not [sic] agree to the production and the Court should deny the request." Docket No. 26 at 4. Defendants claim class actions can "present opportunities for abuse" and that, "because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and the parties." *Id.* at 5 (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)). Defendants argue that, because they have already agreed to production via mail and email, plaintiff does not need class members' phone numbers. *Id.* The Court, however, agrees with plaintiff. While district courts must exercise control over the conduct of counsel and the parties, the Supreme Court has clearly admonished that "an order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101. Defendants point to no "clear record" and provide no specific incidents for which the Court could find "particular abuses by which" the moving part "is threatened." *Id.* at 102; *see also Bass v. Pjcomn Acquisition Corp.*, No. 09-cv-01614-REB-MEH, 2011 WL

902022, at *3 (D. Colo. Mar. 14, 2011).  Furthermore, courts have recognized an interest in apprising collective action members of their rights.  *See, e.g.*, *Lindsay v. Cutters Wireline Serv., Inc.*, No. 17-cv-01445-PAB-KLM, 2018 WL 4075877, at *3 (D. Colo. Aug. 27, 2018); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011).  Courts in this district commonly require defendants to disclose telephone numbers, *see, e.g.*, *Robertson v. REP Processing*, No. 19-cv-02910-PAB-NYW, 2021 WL 4255027, at *6 (D. Colo. Sept. 16, 2021); *Warren v. MBI Energy Servs., Inc.*, No. 19-cv-00800-RM-STV, 2020 WL 5640617, at *4 (D. Colo. Sept. 22, 2020); *Beattie v. TTEC Healthcare Sols., Inc.*, No. 18-CV-03098-RM-NRN, 2019 WL 2866559, at *2 (D. Colo. July 3, 2019); *Clark v. Strad Energy Servs., USA, LTD.*, No. 17-cv-1242-WJM-KMT, 2018 WL 3348879, at *3 (D. Colo. July 9, 2018), and defendants point to no evidence of abuse in any case in this district.  Accordingly, the Court will require defendants to provide putative class members' phone numbers as requested by plaintiff.

### B.  Notice to Conditional Certification

Once a court concludes that conditional certification of an FLSA collective action is appropriate, the court may authorize plaintiff to disseminate a proper notice and opt-in consent form to putative collective action members.  *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169–70 (1989); *see also* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").  The Court has broad discretion regarding the details of the notice sent to potential opt-in plaintiffs.  *Hoffmann-LaRoche*, 493 U.S. at 171.  "The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide

accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate." *Whitehorn*, 767 F. Supp. 2d at 450 (internal citations and quotations omitted).

The proposed Notice contains the necessary information. Docket No. 23-4. The Notice informs the putative class members of the parties involved, the parties' general allegations, information about the collective action designation, how to opt in, and the potential obligations or consequences for putative class members who choose not to opt in. *See id.* at 1–3. In addition, the Notice provides that opt-in plaintiffs must return consent forms to plaintiff's counsel by a certain date, which plaintiff requests be set as ninety days from the date of the Notice. *Id.* at 2; Docket No. 23 at 10. Defendants agree that "the Notice and Consent [can] be disseminated via U.S. First Class Mail and email along with a reminder notice along with posting of the Notice at the worksite." Docket No. 26 at 4. The Court finds no dispute between the parties on this issue and approves the Notice.

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that:

1. This action shall be conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b). The collective action members are defined as follows:

> All current and former Site Paramedics (regardless of actual title) who were employed by HV during the three years preceding the filing of this case.

2. Plaintiff is authorized to act as the representative for the collective action members, and plaintiff's counsel is authorized to act as counsel for the collective.

3.  Within ten days, defendants shall provide to plaintiff's counsel the names, mailing addresses, dates of employment, job title, job location, telephone numbers, and email addresses of all putative members of the FLSA collective in an electronically readable format.

4.  The proposed Notice [Docket No. 23-4] is approved.

5.  Within fifteen days after receiving this list from defendants, plaintiff shall send the Notice by First Class U.S. Mail and email to the last known address of each of the individuals identified on the above-referenced list, and defendants shall post the Notice at each HV worksite.

6.  Within ninety days from the postmark date of the Notice, any individual to whom notice is sent shall "opt in" by returning the necessary documents to plaintiff's counsel.

DATE September 27, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge