## CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (the "Agreement") along with the associated Exhibits are made and entered into by Plaintiff Christian Rapp ("Rapp") on behalf of himself and the Opt-In Plaintiffs (defined below), with the assistance of Collective Action Counsel (defined below), on the one hand, and Defendants HV Occupational Health Advisors of America, LLC ("HV"); Robert Mitchell ("Mitchell"); and Aden Schillig ("Schillig"), with the assistance of their undersigned counsel, on the other. Rapp, the Opt-In Plaintiffs, Collective Action Counsel, HV, Mitchell, and Schillig are referred to collectively herein as the "Parties." HV, Mitchell, and Schillig are referred to collectively herein as the "Defendants."

**WHEREAS,** on July 14, 2020, Plaintiff Christian Rapp filed a civil lawsuit in the United States District Court for the District of Colorado, captioned *Christian Rapp, individually and on behalf of all others similarly situated, v. HV Occupational Health Advisors of America, LLC, Robert Mitchell, and Aden Schillig,* and docketed as Case No. 1:20-cv-02043 (the "Litigation"), alleging that Defendants violated the Fair Labor Standards Act ("FLSA") by failing to pay overtime to Rapp and those alleged to be similarly situated, failing to maintain accurate records, and seeking to certify a collective action of all similarly situated individuals employed by Defendants under the FLSA;

**WHEREAS,** on September 27, 2021, the Court granted in part and denied in part Rapp's Motion for Collective Action Certification and certified a collective action of all "All current and former Site Paramedics (regardless of actual title) who were employed by HV during the three years preceding the filing of this case." (Doc. #36);

**WHEREAS**, after the Court certified the collective action, twenty-five (25) Opt-In Plaintiffs joined the Litigation by filing their executed "Notice of Consent" to join the Litigation with the Court;

**WHEREAS**, in the "Notice of Consent," the Opt-In Plaintiffs agreed to allow Rapp to act as their collective action representative, to be represented by Collective Action Counsel in the Litigation, and to be bound by any settlement agreement negotiated by Collective Action Counsel on their behalf (*see, e.g.,* Doc. #48);

**WHEREAS**, on May 4, 2021, the Opt-In Plaintiffs James Sargent and Matthew Walsh withdrew their Notice of Consents from the Litigation (Doc. #155) thus bringing the total of Opt-In Plaintiffs to twenty-three (23);

**WHEREAS**, Defendants have denied and continue to deny they violated any federal, state, or local laws, failed to pay any employees as required by the FLSA or any state law equivalent, or other unlawful conduct with respect to any of its employees, including, but not limited to, the allegations that Rapp or the Opt-In Plaintiffs raised, or could have raised, in the Litigation. Defendants maintain that they properly paid Rapp and the Opt-In Plaintiffs under the FLSA and state law. Nonetheless, Defendants have concluded that further litigation would be protracted, distracting, and expensive, and that it is desirable that the Litigation be fully and finally settled and dismissed in the manner and upon the terms and conditions set forth in this Agreement;

**WHEREAS**, Rapp, on behalf of himself and the Opt-In Plaintiffs, and Collective Action Counsel believe that their claims have merit. However, Rapp, on behalf of himself and the Opt-In Plaintiffs, and Collective Action Counsel recognize and acknowledge the expense and duration of continued proceedings necessary to prosecute their claims against Defendants through additional

discovery, decertification briefing, summary judgment briefing, pretrial preparation, trial, and any appeals. Rapp, on behalf of himself and the Opt-In Plaintiffs, and Collective Action Counsel also have taken into account the uncertain outcome and the risk of any litigation, as well as the difficulties and delays inherent in all litigation. Based upon their investigation and evaluation, Rapp, on behalf of himself and the Opt-In Plaintiffs, and Collective Action Counsel have determined that the settlement and its terms as set forth in the Agreement are fair and reasonable and in the best interests of Rapp and the Opt-In Plaintiffs;

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED,** by and between Rapp (for himself and the Opt-In Plaintiffs) and Defendants, each with the assistance of its respective counsel of record, that this Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice, as to Rapp, the Opt-In Plaintiffs, and Claimants (defined below), upon and subject to the terms and conditions of this Agreement.

**1.     DEFINITIONS**

1.1     "Approval Order" means an Order granting approval of this Agreement, and approving the release of Released Claims (defined below), and authorizing the Notice of Settlement and Claims Release Form to the Plaintiffs and current Opt-In Plaintiffs, in the same or substantially the same form as attached to this Agreement.

1.2     "Claimant" means Rapp and any Opt-In Plaintiffs whose accurate and complete Notice of Settlement and Claims Release Form is timely received by counsel for Defendants as set forth below.

1.3     "Collective Action Counsel's Fees and Costs" means $54,530.11 to be paid from the Total Settlement Fund (defined below) to Collective Action Counsel for attorneys' fees and litigation costs and expenses incurred by Collective Action Counsel.

1.4     "Collective Action Counsel" means counsel from Leventhal Lewis Kuhn Taylor Swan PC.

1.5     "Distribution Amount" means the Total Settlement Fund less Collective Action Counsel's Fees and Costs.

1.6     "Individual Settlement Amount" means the amount of the Distribution Amount allocated to each Claimant based on a plan of allocation developed by Collective Action Counsel that accounts for each individual's compensation, hours worked, length of employment, and their claims in the Complaint.

1.7     "Last Known Address" means the most recently recorded mailing address for a Claimant from the data that is reasonably available to Collective Action Counsel. In the event a Notice is returned as undeliverable, Collective Action Counsel will, by a known and trusted method, perform a "skip trace" search for said individual. Collective Action Counsel will then forward the Notice to the mailing address determined by the "skip trace" search for said individual. Neither the Defendants nor Collective Action Counsel will be required to take any further steps to locate Claimants.

1.8     "Total Settlement Fund" means the maximum amount that will be paid under the terms of this Agreement: **$100,000.00** plus the employer's share of any payroll taxes

1.9     "Notice of Settlement and Claims Release Form" or "Claims Release Form" means the form through which Claimants may submit a claim for payment under the Agreement,

in the same or substantially the same form as Exhibit 1, and which includes a release of any and all wage and hour claims that may have accrued during any time in which Rapp or the Opt-In Plaintiffs worked for Defendants, relating back to the full extent of the potentially-applicable three year statute of limitations and continuing through the date the Claims Release Form is executed, including but not limited to all state and federal claims for unpaid wages or unpaid overtime and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

1.10 "Notice Deadline" means fourteen (14) days after the Court enters the Approval Order.

1.11 "Notice Date" means the date the Collective Action Counsel mails the attached Notices to the Opt-In Plaintiffs.

1.12 "Opt-In Plaintiffs" means those twenty-three (23) individuals who properly executed a "Notice of Consent" to join the collective action and be represented by Collective Action Counsel and who have not since withdrawn their consents to sue;

1.13 "Notice Response Deadline" means 60 days after the Notice Date.

1.14 "Receipt Date" means the date that Defendants' Counsel receives a Claimant's Release Form, Form W-4, and Form W-9 from Collective Action Counsel.

1.15 "Released Claims" means any and all wage and hour claims, known or unknown, including, but not limited to, any claims for unpaid overtime, compensation, or any other form of wages; and any and all wage and hour and pay-related claims, including but not limited to claims under the FLSA or any other federal, state, or local law concerning wages or overtime (collectively, "Wage and Hour claims") and including, but not limited to, any and all claims associated with or related to such Wage and Hour claims, including claims for equitable or

declaratory relief, liquidated damages or other penalties, which were brought or could have been brought in any case or proceeding, including this Lawsuit, by Rapp or any Opt-In Plaintiff against one or more of the Released Parties.

1.16   "Released Parties" means HV Occupational Health Advisors of America, LLC; Robert Mitchell and Aden Schillig, and all of their past, present and future corporate parents, subsidiaries, divisions, joint ventures, and affiliates; each of their predecessors, successors, and assigns; and all of their past, present and future owners, directors, officers, employees, contractors, partners, members, principals, underwriters, insurers, customers, shareholders, attorneys, accountants, auditors, legal representatives, or agents.

## 2. THE SETTLEMENT

### 2.1   *Settlement Consideration*

2.1.1   The Total Settlement amount shall be distributed by HV and cover (1) Collective Action Counsel's Fees and Costs and (2) the Individual Settlement Amounts of the Claimants.

2.1.2   The Parties understand and agree that any portion of the requested Collective Action Counsel's Fees and Costs not approved and awarded by the Court shall be returned to HV. Neither Collective Action Counsel, Claimants, or anyone other than HV shall have any interest in any unclaimed Individual Settlement Amounts, and such amounts will revert to HV if not timely claimed.

### 2.2   *Consideration to Claimants*

2.2.1   Conditioned on satisfaction of all other requirements imposed by this Agreement, HV shall pay each Claimant their Individual Settlement Amount as one-half non-

wage liquidated damages and one-half as wages. Applicable withholdings and deductions shall be withheld from the one-half of the Individual Settlement Amount allocated as wages.

    2.2.2 Individual Settlement Amounts shall be apportioned pursuant to the payment schedule attached hereto as Exhibit 2 based on a plan of allocation developed by Collective Action Counsel that accounts for each individual's compensation, hours worked, length of employment, and their claims in the Complaint.

  2.3 *Taxes*

    2.3.1 For income and payroll tax purposes, the Parties agree that payment of one-half of the Individual Settlement Amount for each Claimant shall be deemed a payment in settlement of claims for unpaid wages.

    2.3.2 The payments allocated to Claimants as non-wages shall be reported in the year of payment as non-wage income to Claimants on a Form 1099 and on any other form or in any other manner required by law. The payment of the portion designated as non-wages is conditioned upon each Claimant providing any necessary tax forms, including a Form W-9 to Total Safety through its counsel of record.

    2.3.3 The payment of Collective Action Counsel's Fees and Costs is conditioned upon Collective Action Counsel providing any necessary tax forms, including a Form W-9 to HV through its counsel of record.

    2.3.4 Other than the withholding and reporting requirements set forth in Sections 2.3.2, Claimants are solely responsible for any necessary reporting by the Claimant of that Claimant's share of any federal, state, and/or local income or other tax or any other withholdings, if any, on any of the payments made pursuant to this Agreement. Defendants make

no representations and it is understood and agreed that Defendants have made no representations as to the taxability to any Claimant of any portions of the settlement payments, the payment of any costs or an award of attorneys' fees, or any payments to the Claimants.

### 2.4 Court Approval of Settlement and Notice

Contemporaneously with the execution of this Agreement, the Parties will file a joint motion, which has been approved by all Parties, asking that the Court enter the Approval Order. Such Order will (1) provide for approval of the Agreement, (2) authorize the mailing of the Notices of Settlement and Claims Release Forms, (3) stay the case through May 15, 2023 (3) dismiss the Action with prejudice upon final settlement payment on or before May 15, 2023, and (4) enforce the release of Released Claims. Failure of the Court to enter the Approval Order in its entirety or in a substantially similar form will void the settlement and the terms of this Agreement. Should the Court decline to stay the case, the Parties agree to toll the claims at issue in the Litigation through May 15, 2023.

### 2.5 Notices of Settlement and Claims Release Forms to Claimants

2.5.1 If, pursuant to Paragraph 2.4 of this Agreement, the Court enters the Approval Order and provides authorization to Collective Action Counsel to send the Notice of Settlement Claims Release Form to the Opt-In Plaintiffs, Collective Action Counsel will facilitate, on or before the Notice Deadline (14 days from the date of Court Approval of the Agreement), the mailing of the Notice of Settlement and Claims Release Forms along with a Form W-4 and Form W-9, via email and regular mail with postage affixed, to the Claimants at the Last Known Address for each.

2.6    *Responses to the Notices*

    2.6.1    Claimants who wish to receive payment pursuant to this Agreement must fully complete, execute, and mail and/or email per the instructions therein, the Claims Release Form, Form W-4, and Form W-9 by the Notice Response Deadline, as set forth in the Claims Release Form.

    2.6.2    Collective Action Counsel is responsible for ensuring that the Claims Release Form, Form W-4, and Form W-9 are properly filled out and contain all the appropriate information by the Notice Response Deadline.

    2.6.3    Collective Action Counsel is responsible for forwarding the properly filled out Claims Release Form, Form W-4, and Form W-9 to Counsel for HV by the Notice Response Deadline.

2.7    *Payments of Settlement to Claimants*

    2.7.1    On November 15, 2022, after the Notice Response Deadline, HV shall pay the Individual Settlement Amount to that Claimant.

    2.7.2    Checks issued by HV to the Claimants and/or Collective Action Counsel shall remain negotiable for a period of 120 days from the date of issuance.

    2.7.3    The Parties understand and agree that any checks issued to Claimants that are not negotiated within 120 days from the date of issuance shall be canceled and the amounts of which shall revert back to HV.

    2.7.4    Any portion of the Settlement Fund not distributed to Rapp or the opt-In Plaintiffs who fail to timely return a Claims Release Form shall revert to HV.

2.8    *Releases and Dismissals*

2.8.1 Upon the date that counsel for HV accepts a Claims Release Form, Rapp and each of the Claimants shall be deemed to have, and by operation of the Approval Order shall have, fully, finally, and forever released, relinquished and discharged all Released Claims against all Released Parties.

2.9 *Payments of Costs and Attorneys' Fees to Collective Action Counsel*

2.9.1 The Parties to this Agreement have agreed that Collective Action Counsel will seek an award from the Total Settlement Fund of **$54,530.11** in fees and costs and agree that these amounts are fair and reasonable under the circumstances of this Litigation.

2.9.2 Any order of the Court concerning the amount of attorneys' fees or costs to be paid to Collective Action Counsel shall not constitute grounds for cancellation or termination of the Agreement. Defendants agree not to oppose Collective Action Counsel's motion for approval of fees and costs.

2.9.3 HV shall have no liability with respect to any claim for any payment made pursuant to this Agreement for attorneys' fees or other costs or expenses of the Litigation asserted by any Claimant, with the sole exception of a claim by Collective Action Counsel for the payment of attorneys' fees or costs pursuant to this Agreement.

2.9.4 On March 15, 2023, and May 15, 2023 in two payments of $27,265.06 and $27,265.05, HV shall distribute Collective Action Counsel's Fees and Costs to Collective Action Counsel in the amount approved by the Court. This payment shall be reported consistent with the provisions in this Agreement. Collective Action Counsel shall provide Defendants' Counsel with their taxpayer identification numbers, a Form W-9, and written instructions for this payment.

2.10    *Confidentiality*

      2.10.1 The Parties agree that (other than any necessary disclosures made to the Court) the Litigation, the fact of settlement, the contents of this Agreement and the Exhibits hereto, the Parties' settlement negotiations, and all related information shall be held strictly confidential by the Parties and their counsel and shall not be directly or indirectly disclosed to any third parties (including the media) or directly or indirectly referenced or described on any websites (including but not limited to social media sites and blogs). The Parties and their counsel further agree that they shall not provide information to the press or otherwise directly or indirectly describe, opine upon, publicize or cause to be publicized the case, settlement, or facts leading up to the case or settlement.

2.11    *Termination of Settlement*

      2.11.1 In the event that the Agreement is not approved by the Court or the settlement set forth in the Agreement is terminated, cancelled, declared void, or fails to become effective in accordance with its terms, or if the Approval Order does not become final, or the Approval Order is reversed or vacated or the Agreement is invalidated on appeal, no payments shall be made by, or on behalf of, Defendants to anyone pursuant to this Agreement, and this Agreement shall be deemed null and void with no effect on the Litigation whatsoever.

      2.11.2 In the event that the Agreement is not approved by the Court, the Parties agree to attempt to resolve any issue that prevented the approval of the Agreement. In the event the Parties are not able to amicably resolve such dispute after due effort, the Parties shall resume litigating this Litigation at that time as if no Agreement had been entered. In such event, the terms and provisions of the Agreement shall have no force and effect with respect to the Parties

and shall not be used in this Litigation or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of the Agreement shall be treated as vacated.

2.12 *Miscellaneous Provisions*

2.12.1 This Agreement resolves claims which are contested in good faith and shall not be deemed an admission by any of the Parties as to the merits of any claim or defense. The Parties agree that the amounts paid as a result of this Agreement and the other terms of the settlement were negotiated in good faith and were reached voluntarily after consultation with competent legal counsel.

2.12.2 Neither the Agreement nor any act performed or executed pursuant to this Agreement (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any of the Released Claims, or of any wrongdoing or liability of any Released Party; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any Released Party in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.

2.12.3 This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties.

2.12.4 The Agreement constitutes the entire agreement among the Parties hereto and the Claimants. No representations, warranties or inducements have been made to any party concerning the Agreement or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents.

2.12.5 Each counsel or other person executing the Agreement on behalf of any party hereto hereby warrants that such person has the full authority to do so.

2.12.6 The Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument.

2.12.7 The Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto, but this Agreement is not designed to create any third-party beneficiaries except for the non-defendant Released Parties.

2.12.8 The Agreement shall be considered to have been negotiated, executed and delivered, and to have been wholly performed, in the State of Texas, and the rights and obligations of the Parties to the Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Texas without giving effect to that State's choice of law principles.

2.12.9 The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either party. No party shall be deemed the drafter of this Agreement. The Parties acknowledge that the terms of the Agreement are contractual and are the product of negotiations between the Parties and their counsel. Each Party and their counsel cooperated in the drafting of this Agreement, and it shall not be construed against either Party.

**SIGNATURE PAGE TO FOLLOW**

In witness hereof, this Settlement Agreement and General Release has been executed this 24th day of July 2022.

**Plaintiff Christian Rapp**, *on behalf of himself and those similarly situated,*

By signing this Settlement Agreement and General Release, I acknowledge that I read it; I understand each provision in it, and I know that I am giving up important legal rights asserted on behalf of myself and those similarly situated; I agree with and accept everything in it; I am aware of my right to consult an attorney before signing it; and I have signed it knowingly and voluntarily.

_____  07/24/2022
Plaintiff Christian Rapp          Date

**Leventhal Lewis Kuhn Taylor Swan PC**, *on behalf of Rapp and the Opt-In Plaintiffs as Collective Action Counsel,*

_____  07/25/2022
Michael D. Kuhn                   Date
Andrew E. Swan
LEVENTHAL | LEWIS
KUHN TAYLOR SWAN PC
620 North Tejon Street, Suite 101
Colorado Springs, CO 80903
Telephone: (719) 694-3000
Facsimile: (866) 515-8628
Email: mkuhn@ll.law
       aswan@ll.law

Defendant HV Occupational Health Advisors of America, LLC

_____Marie H de Valenzuela_____   _____July 28, 2022_____
                                        Date

Defendant Robert Mitchell

_____[signature]_____   _____August 1st, 2022_____
                              Date

Defendant Aden Schillig

_____[signature]_____   _____7.28.22_____
                              Date